UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SCOTT T. NILES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-02214-TWP-MJD |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Scott T. Niles ("Niles") requests judicial review of the final decision of the
Commissioner of the Social Security Administration ("Commissioner") denying his application
for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title
XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A).
For the reasons set forth below, the Magistrate Judge recommends that the District Judge
**REVERSE** and **REMAND** the decision of the Commissioner.

## I.    Background

Niles filed an application for DIB on February 28, 2013 and filed an application for SSI
on March 2, 2013, alleging an onset of disability date of April 1, 2011. [Dkt. 17-2 at 14.] Niles
alleges disability due to his conditions inclusive of depression, bipolar, and anxiety.[1] [Dkt. 17-2
at 19.] Niles's application was initially denied on May 17, 2013, and again denied on July 1,
2015, upon reconsideration. [Dkt. 17-2 at 14.] Niles timely filed a written request for a hearing,
which was held on February 3, 2015, before Administrative Law Judge Ronald T. Jordan

---

[1] Niles and the Commissioner recited the relevant factual and medical background in more detail in their opening
briefs. [*See* Dkt. 19 and Dkt. 20.] Because these facts involve Niles's confidential and otherwise sensitive medical
information, the Court will incorporate by reference the factual background in the parties' briefs.

("ALJ"). [Dkt. 17-2 at 14.] The ALJ issued a decision on February 19, 2015, again denying

Niles's applications for DIB and SSI. [Dkt. 17-2 at 11.] On June 20, 2016, the Appeals Council

denied Niles's request for review, making the ALJ's decision the final decision for purposes of

judicial review. [Dkt. 17-2 at 1.] Niles timely filed his Complaint on August 18, 2016, which is

now before the Court. [Dkt. 1.]

## II.    Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. §

423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the

ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful

activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that

significantly limits his ability to perform basic work activities, he is not disabled; (3) if the

claimant's impairment or combination of impairments meets or medically equals any impairment

appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is

disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his

past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step

three and cannot perform his past relevant work but he can perform certain other available work,

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a
claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance
Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to
refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations
found in quoted court decisions.

he is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity (RFC), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III.    The ALJ's Decision

The ALJ first determined that Niles has not engaged in substantial gainful activity since April 1, 2011, the date of the alleged onset of disability. [Dkt. 17-2 at 16.] At step two, the ALJ determined that Niles "has the following severe impairments: bipolar disorder, adjustment

disorder, and unspecified anxiety." [Dkt. 17-2 at 16.] However, at step three, the ALJ found that Niles does not have an impairment or combination of impairments that meets or medically equals a listed impairment. [Dkt. 17-2 at 17.] In making this determination, the ALJ considered Listings 12.04 (Depressive, Bipolar and Related Disorders) and 12.06 (Anxiety and Obsessive-Compulsive Disorders) for Niles's impairments but found that the medical evidence did not support all criteria of those listings. [Dkt. 17-2 at 17.]

To determine if Plaintiff met a listing, the ALJ examined "Paragraph B" criteria, which includes restriction of activities of daily living, difficulties in maintaining social functioning, difficulties in maintaining concentration, persistence, or pace, and repeated episodes of decompensation. [Dkt. 17-2 at 17.] When evaluating whether the "Paragraph B" criteria were satisfied, the ALJ determined if the mental disorder resulted in extreme limitation of one, or marked limitation of two "Paragraph B" areas of mental functioning. [Dkt. 17-2 at 17.] The ALJ found Plaintiff has mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. [Dkt. 17-2 at 17.] Because Plaintiff did not have at least one extreme limitation or two marked limitations, the ALJ determined he did not meet Listing 12.04 or 12.06. [Dkt. 17-2 at 17.]

The ALJ next analyzed Plaintiff's residual function capacity ("RFC"). He concluded Plaintiff has the RFC to perform a full range of work with the following nonexertional limitations:

> He is limited to work involving simple, repetitive tasks requiring no independent judgment regarding the primary work processes, with static and predictable work goals from day to day, with no production rate pace involved; and only occasional, superficial contact with coworkers, but no contact with the public.

[Dkt. 17-2 at 18.] In finding these limitations, the ALJ considered Niles's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 17-2 at 18.] The ALJ noted, "[t]he record demonstrates the symptoms related to [Plaintiff's] mental impairments are not as limiting as alleged." [Dkt. 17-2 at 19.] The ALJ then assigned considerable weight to the state's mental consultants. [Dkt. 17-2 at 20.] Additionally, the ALJ gave little weight to the medical statement completed by Niles's treating therapist, Timothy Swain, MSW, LCSW, and co-signed by John F. Schiltz, M.D. (the "Swain/Schiltz opinion") [Dkt. 17-2 at 20.] Although the ALJ "acknowledge[d] their treating relationship", he found the "degree of deficits noted in the report [were] inconsistent with objective medical evidence." [Dkt. 17-2 at 20.]

At step four, the ALJ concluded the Plaintiff is unable to perform any past relevant work [Dkt. 17-2 at 21.] The ALJ then proceeded to step five, where he received testimony from the vocational expert indicating that someone with Plaintiff's education, work experience, age, and RFC would be able to perform unskilled light and medium jobs such as a janitor, stock clerk/order filler, or folding or insert machine operator. [Dkt. 17-2 at 22.] Because these jobs exist in significant numbers in the national economy, the ALJ concluded that Plaintiff is not disabled. [Dkt. 17-2 at 22.]

## IV.    Discussion

Niles asserts the ALJ committed various errors that require remand. Specifically, Niles argues the ALJ failed to adequately explain why he assigned little weight to the Swain/Schiltz opinion. [Dkt. 19 at 1]. Niles also asserts the ALJ's failure to include all of the limitations imposed by the state agency physician, Dr. Ken Levoko, in the hypothetical to the Vocational Examiner ("VE") warrants remand. [Dkt. 19 at 31-33.]

### A.  Weight of Medical Opinions

Niles challenges the ALJ's RFC determination in two separate arguments, but both relate to the ALJ's decision to assign little weight to the opinion of Niles's treating therapist, Timothy Swain, and physician, John Schiltz. [Dkt. 19 at 1.] First, Niles argues the Swain/Schiltz medical statement was "well-supported" and "not inconsistent with other substantial evidence," 20 C.F.R. § 404.1527(c)(2), so the ALJ inappropriately discounted the medical opinion. [Dkt. 19 at 25-31.] Next, Niles argues even if the Swain/Schiltz opinion is not entitled to controlling weight, the ALJ failed to address the appropriate factors when he assigned little weight to the opinion, so the case should be remanded. [Dkt. 19 at 30-31.]

At the time of the hearing in February 2015, Swain and Schiltz (and, occasionally, Dr. Erika Cornett) at Community Howard Regional Health, had treated Niles approximately once a month since 2013. Typically, the opinion of a treating source on "the nature and severity of a medical condition is entitled to controlling weight if supported by medical findings and consistent with substantial evidence in the record." *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Skarbek v. Barnhart,* 390 F.3d 500, 503 (7th Cir. 2004)); *see also* 20 C.F.R. § 404.1527(d)(2). However, the ALJ may discount a treating physician's medical opinion if it "is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability." *Schmidt,* 496 F.3d at 842. In doing so, "[t]he ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Additionally, the "ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that

points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (internal citation omitted).

Swain completed a medical statement in January of 2015 that expressed Niles was markedly impaired in multiple areas. [Dkt. 17-11 at 58.] Swain noted Niles was markedly impaired in his ability to work a normal workday or workweek without interruptions from his symptoms; his ability to work around others; and his ability to ask for help and ask questions. [Dkt. 17-11 at 60.] Additionally, Swain estimated Niles would likely be absent from work three or more times per month because of his symptoms. [Dkt. 17-11 at 61.] The ALJ assigned this opinion little weight because he believed the severe limitations Swain imposed conflicted with the evidence in Niles's mental status exams and his daily activities. [Dkt. 17-2 at 20.] In the single paragraph addressing the Swain/Schiltz opinion, the ALJ string cited multiple medical records without any further explanation. Niles asserts this is insufficient, and the Court agrees. If the ALJ decides to not give controlling weight to the treating physician's opinion (or, in this case, the treating therapist and physician team), he must explain his reasons for doing so in order to construct the "logical bridge" to his conclusion. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). A conclusory sentence stating that the medical opinion is inconsistent with the remainder of the record is not sufficient. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The Commissioner argues that although the ALJ's specific discussion of the Swain/Schiltz opinion was brief, the ALJ's opinion as a whole satisfies the "minimal articulation" standard. [Dkt. 20 at 11.] For example, the ALJ notes that Niles reported his daily activities include the following: "performing household chores, preparing simple meals, shopping, driving, and engaging in activities such as watching television, reading, using a computer, socializing on Facebook, or job hunting." [Dkt. 17-2 at 20.] Niles's ability to perform

7

these activities, the ALJ points out, is inconsistent with the assertion that Niles has marked difficulties in social functioning. The ALJ further explained Niles has no more than moderate difficulty with regard to social functioning because even though he "does not want to be around people [and feels] like they are looking at him or talking about him." [Dkt. 17-2 at 17.] Niles volunteers and attends church and group therapy. [Dkt. 17-2 at 17.]

But the ALJ does not discuss *why* volunteering, attending counseling occasionally, going to church, and Niles's other daily activities are at all inconsistent with someone who suffers from Niles's symptoms. The Seventh Circuit has explained, "[t]he pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically between home and office or factory or other place of paid work." *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006). Church requires limited time each week, and most of the other activities can be done at will, which differs greatly from the interactions and pressures Niles might encounter at a job.

The ALJ further found, contrary to the Swain/Schiltz opinion, that Niles had only moderate difficulties in concentration, persistence, or pace because he was alert and oriented without any indication of problems with memory, attention, comprehension, or concentration ability, and he was able to follow instructions. [Dkt. 17-7 at 41.] However, Swain explained in his progress notes that Niles was possibly hypo/manic, he "covered several topics while speaking with multiple clauses and repeated uncompleted sentences." [Dkt. 17-10 at 28.] He was also rambling, talkative, and lacked focus at a Social Security Disability exam by Dr. French. [Dkt. 17-7 at 37.] Again, the medical records are not in stark contrast with the Swain/Schiltz opinion, as the ALJ's opinion implies, and the ALJ does not explain why he believes Swain's statements are inconsistent with the medical record as a whole. *See Clifford,* 227 F.3d at 870 (finding the

8

ALJ erred when he did not explain how the treating doctor's opinions differed from the medical evidence). Consequently, the ALJ did not provide a logical bridge from the medical records to his conclusion to assign little weight to the opinion of Niles's treating source.

Niles alternatively argues that the ALJ erred when he failed to explicitly address several factors including the length, nature and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinions. 20 C.F.R. § 404.1527(c)(2). Even though the ALJ is not required to address each factor in one particular place in the opinion, he still must examine all the factors in making his decision. In this case, the ALJ acknowledges the treating relationship, but there is no indication that the ALJ took any of the other factors into account when he assigned "little weight" to the Swain/Schiltz opinion.

As the ALJ failed to adequately explain his reasons for discrediting the Swain/Schiltz opinion, including addressing the required factors above, the ALJ failed to construct the necessary logical bridge from the evidence to his conclusion. Consequently, the Magistrate Judge recommends the Court **REMAND** the matter to the Commissioner for further proceedings.

### B.  Residual Functional Capacity

The ALJ assigned "considerable weight" to state agency physician Dr. Lovko's opinion and patterned a portion of the RFC assessment after Dr. Lovko's commentary in the Mental Residual Functional Capacity Assessment. However, Niles argues the RFC was incomplete because the ALJ did not use the entirety of the restrictions proposed by Dr. Lovko. [Dkt. 17-2 at 20.] The argument focuses on this portion of Dr. Lovko's opinion:

> The claimant seems to be able to maintain at least a minimal level of relationship with others. Therefore it appears that the claimant would be able to relate adequately to coworkers, and to work supervisors. Interpersonal conflicts on the job would probably be within normal limits for the population at large. However,

9

the claimant appears to be somewhat avoidant and irritable. Thus the claimant could not work with the general public or in jobs which require intensive, interpersonal contact with others. The claimant would appear to work best alone, in semi-isolation from others or as part of a small group. The claimant could work with a supervisor who was normally considerate and positive, but would have problems with a supervisor who was often negative, critical or quarrelsome.

[Dkt. 17-3 at 10.]

The ALJ devised an RFC that permitted "only occasional, superficial contact with coworkers, but no contact with the public." [Dkt. 17-2 at 18.] Although the ALJ need not specifically include every limitation alleged by Plaintiff in the RFC, he must connect the "dots between [Niles's] impairments, supported by the evidence in the record, and the RFC finding." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004). Here, the ALJ credited Dr. Lovko's assessment, which included non-exertional limitations relating to Niles's ability to work with others. The RFC reflects these limitations by restricting Niles's contact with coworkers and prohibiting contact with the public.

Niles asserts the ALJ erred by not also addressing Dr. Lovko's finding that Niles would have difficulty with a supervisor that was negative, critical or quarrelsome. However, Niles's argument regarding one sentence of Dr. Lovko's assessment ignores the remainder of the assessment. Dr. Lovko also remarks that Niles could relate adequately to supervisors and that "interpersonal conflicts on the job would probably be within normal limits for the population at large." [Dkt. 17-3 at 10.]  It is reasonable to believe that many people would have problems with a supervisor who is negative, critical or quarrelsome. Excluding this rather subjective limitation from the RFC, while including language to address Dr. Lovko's concrete limitations concerning Niles's ability to work with others, does not constitute reversible error.

## V.    Conclusion

The standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  Where, as here, the ALJ did not build a logical bridge between the evidence in the record and the ALJ's conclusion, the Court must **remand**. As the Court cannot find a complete logical bridge in the ALJ's five-step sequential analysis, the Court recommends that the Commissioner's decision be vacated and **REMANDED** for further proceedings.

### Notice Regarding Exceptions

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n.7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Davis v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Dated:  16 JUN 2017

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

11

Distribution:

Nancy L. Green
CAMDEN & MERIDEW, PC
ng@camlawyers.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov